FILED'11 APR 14 10:02usDC·ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LAWRENCE ROY BECK,                                    CV. 08-636-KI

          Petitioner,                          OPINION AND ORDER

    v.

MARK NOOTH, Superintendent,
Snake River Correctional
Institution,

         Respondent.


Alison M. Clark
Federal Public Defender's Office
101 S.W. Main Street, Suite 1700
Portland, OR 97202

    Attorney for Petitioner

John Kroger
Attorney General
Kristen E. Boyd
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

    Attorneys for Respondent


KING, Judge


1 -- OPINION AND ORDER

Petitioner, an inmate at Snake River Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the amended petition is granted.

## BACKGROUND

On November 16, 2003, police pursued petitioner in a high-speed chase in Sutherlin, Oregon, in an effort to arrest him on charges of Assault IV, Menacing, Harassment, and a probation violation.  The police discontinued the pursuit due to safety concerns.  Resp. Exh. 109 at 5-8.

On November 26, 2003, police again engaged in a high-speed pursuit of petitioner.  During the course of that pursuit, petitioner stopped and let a female passenger exit his vehicle. Police directed the female to lay prone on the ground.  At that point, petitioner yelled at one of the officers that he was going to kill him.  As police began pursuing petitioner, he pulled out a .357 Magnum and began firing at the officers.  Police successfully employed spike strips flattening petitioner's tires, and causing petitioner to lose control of his vehicle and drive into a ditch. Petitioner was taken into custody.  Id. at 9-16.

On December 2, 2003, a grand jury returned an indictment charging petitioner with three counts of attempting to elude police, one count of reckless driving, four counts of attempted murder, and five counts of carrying/using a dangerous weapon. Approximately one month later, on January 9, 2004, petitioner

signed a "Plea Statement and Order," pleading guilty to all charges. Resp. Exh. 103. On that same day, petitioner appeared before the Honorable Joan G. Seitz.

Prior to accepting petitioner's plea, Judge Seitz engaged petitioner in a colloquy, during which petitioner responded primarily with one or two word answers, and expressed his opinion that pleading guilty to all counts, contrary to the advice of counsel and without any concessions from the state, was in his best interest. During the course of the discussion, petitioner advised the trial judge that jail officials would not let him have his medication:

> MR. TOWER [Defense counsel]: * * * As you may recall, Mr. Beck, in his prior I think court appearance, he has wanted to take this action. I have been reluctant for him to do that. He knows that. I, as you can see, and by Mr. Wesenberg's comments, **there's no advantage to him taking this action at this point, but he is insistent.** I told him that I would bring him before the Court, that even though I didn't agree with the facts of his actions since there are facts which he has related which, if believed by a jury, would be a defense to some of these charges, but **he still insists that he wishes to take this action and enter his pleas of guilty to the charges in the indictment.** So he wishes to do so. I would ask that the Court, because of the extent of the charges, obviously many charges are -- there are obviously very, very serious, that each charge is reviewed with him by the Court, the elements, so that he is certain on the record as to what he is pleading to. Due to the length maybe if he could remain seated.
>
> * * *
>
> THE COURT: **Mr. Beck, it appears every time you've come into court since you've been charged with these offenses that you have wanted to plead guilty.**

3 -- OPINION AND ORDER

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Some people who are in a hurry to plead guilty do so and then after they're sentenced, they go, whoa, maybe I shouldn't have done that.  I can't make you any promises about what sentence you're going to incur.

THE DEFENDANT:  Right.

THE COURT:  As I look through this indictment in which you're charged with some offenses that involve different victims, different persons, even if you are charged with all of these events occurring at the same time but they involve different people, the Court may, if I want to, could impose consecutive time.

THE DEFENDANT:  I understand.

* * *

THE COURT:  If you choose to do this, then you have to do it of your own free will because you're choosing to do this, but you need to do it because you understand what you're doing, not because you're in all fired hurry to get it done.  Do you follow me?

THE DEFENDANT:  Yep.

THE COURT:  I'm speaking as plainly as I can speak because I want to make sure that you have a concept of what you're doing.

THE DEFENDANT:  I do.

* * *

THE COURT:  So you are taking your own risk by not proceeding to trial and apparently there is no negotiation that's actually been promised to you, so there's no leniency, nothing.  You're just doing this because you want to do it; is that right?

THE DEFENDANT:  Yeah.  ***It's the best thing.***

THE COURT:  It might -- may not be the best thing in terms of the number of years you end up going to jail,

4 -- OPINION AND ORDER

and that's why your lawyer has been trying to delay things so that he can get the information, figure out if there's any legal defenses you have, and then educate you about what your choices are.  If you choose to do this with no negotiations involved, then what you're saying is, I'm not holding my lawyer accountable.  What you're saying is, I'm assuming the responsibility myself to know what I'm doing and whether or not that's the best for me.

THE DEFENDANT:  Yeah.

THE COURT:  Are you willing to do that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Considering the seriousness of these charges?

THE DEFENDANT:  Yes.

THE COURT:  All right.  I'm going to back up and we're going to have a long conversation today.  And at any stage of the proceedings, if you don't understand what I'm saying or you want to ask me a question, then just do that.  All right?

THE DEFENDANT:  Okay.

**THE COURT:  I'm assuming that today you're not taking any medication; is that correct?**

**THE DEFENDANT:  No, ma'am, they ain't let me have it.**

THE COURT:  Okay.  Do you feel that you understand what you're doing today?

THE DEFENDANT:  Yes, I do, ma'am.

\* \* \*

THE COURT:  \* \* \* Are you depressed enough that you are choosing to do this because you think you need to be punished?

THE DEFENDANT:  No.  I just know what I did, so no -- **I better deal with it and get it over, you know.**

5 -- OPINION AND ORDER

* * *

THE COURT:  I'm assuming that you read the plea
statement before you signed it?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Did you understand what you read?

THE DEFENDANT:  Yes.

THE COURT:  If you enter these pleas, as I
indicated, you're giving up that jury trial, that right
to remain silent, that right to see and hear all the
witnesses and to question them, and you understand that
the Court's free to either give concurrent treatment,
consecutive treatment.  Some of these offenses are Ballot
Measure 11 offenses and that means there are mandatory
minimums.  * * * Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  Let's go through each count.

Resp. Exh. 104 at 3-10 (emphasis added).

After explaining each count of the indictment, the court

inquired again as to petitioner's intention to plead guilty.

THE COURT:  Do you have any questions about what
you're doing, because if you do, I'm more than happy to
give Mr. Tower additional time to talk with you or I'm
happy to have you ask questions if I can answer them.

THE DEFENDANT:  No.  It's all right, Your Honor.

THE COURT:  You still want to proceed?

THE DEFENDANT:  Yes.

THE COURT:  Now, I don't normally go to this much
trouble to discourage somebody from entering a guilty
plea, and I'm not trying to discourage you, but if you
don't do it with knowledge of what you're doing, you're
going to come back in six months or a year from now and

you're going to be petitioning the Court saying I didn't
understand what I was doing and I want to start over
again.  You don't get that right once you do this.  Do
you understand that?

THE DEFENDANT:  Yeah, I understand.

Resp. Exh. 104 at 22-23.

Despite petitioner's expressed desire to be sentenced
immediately and get things "over with", Judge Seitz ordered the
preparation of a Presentence Report.  Id. at 25-26.  The
Presentence Report sets forth petitioner's extensive juvenile and
adult criminal history.  Petitioner's juvenile record began in
1987, at the age of ten.  Resp. Exh. 121.  Petitioner was made a
ward of the state, and three years later he was committed to
Hillcrest State Training School.  In 1992, a mental "hold" was
placed on petitioner by the county.  The Presentence Report lists
petitioner's juvenile offenses, from 1987 to 1993, including
Menacing, Harassment, Criminal Mischief, Assault IV, Arson I, Minor
in Possession, Reckless Driving, Attempting to Elude, Resisting
Arrest, Criminal Trespass, and Animal Abuse.  The Presentence
Report lists petitioner's adult criminal convictions for Assault,
Unlawful Use of a Motor Vehicle, Criminal Mischief, Driving while
Suspended, Arson I, Criminal Mischief, Harassment, and Theft.

Additionally, the Report reveals that during petitioner's
recent incarceration from September 11, 2000, to July 9, 2003, he
received seven major level citations for inmate misconduct.

Similarly, while on probation or post-prison supervision, he was unable to conform his conduct, receiving eleven "structured sanctions for violations". Id. During his incarceration at the county jail for the instant offenses, he assaulted a Sheriff Deputy.[1]

The Presentence Report also references petitioner's mental health history, substance abuse, and educational background, including the following:

> Mental Health: The offender states that he has spent time at the State Hospital. He further reports being at the Mercy Behavioral Center two times in 1992 and once in 1993.
>
> * * * * *
>
> Employment: The offender states that he receives Social Security Disability payments for psychiatric problems. He is not employed.
>
> * * * * *
>
> The offender said that the last grade he fully completed in school was the 4th grade. He said that he was kicked out of school in the 5th grade for stabbing a teacher in the eye.

Resp. Exh. 121 at 6-7.

At the sentencing hearing on February 23, 2004, defense counsel and petitioner referenced the content of the Presentence Report, and the circumstances giving rise to his current convictions. Petitioner advised the court that he was experiencing

---

[1] The incident report reflects that the altercation arose after petitioner demanded to contact his doctor regarding his medications. Resp. Exh. 109.

auditory hallucinations and was not taking previously-prescribed

medication:

> MR. TOWER:  Your Honor, of course the Presentence
> gives kind of a brief history of Mr. Beck and certainly
> a sad history that goes back some years.  Here you have
> somebody with a very limited education, that hasn't been
> in school since roughly the 5th grade, so obviously his
> ability to obtain and keep work is very, very limited,
> and he hasn't been able to hold any steady employment.
> Mixed within the juvenile history, of course, there are
> stays at the State Hospital, stays at Mercy Behavior
> Health, obviously a very disturbed young man.  Next,
> again, to this is the substance abuse, be it alcohol or
> drugs, and of course that was involved in this incident
> and certainly didn't help his judgment at all.

                              * * *

> THE COURT: Mr. Beck, is there anything you want to
> say?

> THE DEFENDANT:  Yeah.  I did feel, you know, that I
> did do wrong and that I made a mistake, you know.  I'm
> willing to get the help that I need to so I can live a
> normal life when I get out.

> THE COURT:  Do you have any understanding of why it
> was that -- what set you off on this episode?

> THE DEFENDANT: Well, the last thing I heard, you
> know, in drinking and the last thing I heard was that the
> lady who was with me that day was pregnant and it kind of
> made me upset because I let her out at my house and the
> officer just, you know, got her down on the ground and
> had his knee in her back, and I was just going to take
> off.  I was going to take off and then I seen that and in
> my head, it hurt because, hey, that's a kid, you know,
> he's not just hurting the lady, he's hurting the kid too.
> So it just -- **and lately since I've been out of -- got
> out of prison, I started hearing voices back in 2003, the
> fifth month.  I went through SMU program and started on
> medication.  I haven't been on my medication.   I was
> suppose to be taking Ritalin and I just started going
> downhill and got on meth and that's my problem.    It
> didn't help me.**

9 -- OPINION AND ORDER

Resp. Exh. 105 at 7-9 (emphasis added).

The trial judge imposed consecutive 90-month sentences for each count of Attempted Murder, and concurrent sentences on the remaining counts, totaling 360 months imprisonment. Petitioner did not properly file a notice of appeal. However, he sought state post-conviction relief on the basis that he was denied effective assistance of counsel and due process because, among other things, the trial court and defense counsel failed to determine whether he was competent to enter a plea.

At the post-conviction proceeding, petitioner offered as an exhibit his deposition testimony (Resp. Exh. 113) in which he stated that (1) he is currently on "psych medicines"; (2) when he was released from prison in 2003 it was recommended that he go to the Oregon State Hospital; (3) he asked his attorney for a mental health evaluation; and (4) he pled guilty because his attorney told him to, he believed he would receive a sentence of 90 months, and he did not understand the rights he was giving up.

Additionally, post-conviction counsel read into the record portions of a psychological evaluation by Dr. Douglas Marlow:

> MR. KLAHN: Okay. We'll make an offer of proof as to the psychological report. In the psychological report, they said that he experienced auditory hallucinations. He's been hearing voices since he was age 10, and has also experienced visual hallucinations.
>
> He stated that, at times, he would hear people in his trailer house, even though he knew he was incarcerated in jail someplace.

His auditory hallucinations have been voices telling
him to kill his father and his family, that these voices
mock him and torment him.  They haunt him.

He has, according to the conclusions, he has a
psychological disorder and major depressive disorder. He
has an alcohol-dependent disorder.  He has attention
deficit hyperactivity disorder.  He has an amphetamine-
induced mood disorder with mixed features.

* * *

The bottom line is that he has all kinds of
problems.  He has an IQ of 60, which would get him Social
Security, and he has – I think – a limited education
through the fourth or fifth grade, so it makes it very
difficult for him to read.

Resp. Exh. 114 at 7-8.

The psychological report referenced by post-conviction

counsel, which respondent correctly points out is based upon an

interview with petitioner and document review, provides as follows:

**HISTORY AND PRESENTATION:** Mr. Beck has a long history of
institutionalization for legal and psychiatric reasons.
He stated he was first "a locked up" since age 10 and has
been incarcerated or in residential treatment for most of
his life.  He stated his longest periods outside of
treatment or incarceration have typically been two weeks
to one month and then he would find himself in legal
difficulties or not be able to function psychologically,
and returned to a controlled environment.  His legal
history includes multiple Assault IV charges, Arson I
(following an argument with his father he intentionally
burned his home down at age 15 but no legal charges were
filed in that incident), Theft I and at least three
DUI's.

* * * * *

Mr. Beck has experienced auditory hallucinations (hearing
voices) since the age of 10 and has also experienced
visual hallucinations at times.  He stated that once
after he had been let out of prison he saw people in his

trailer house that he knew were still incarcerated.
Although this may have been a period of stress for him,
he denied that he was using illicit substances at that
time.  His auditory hallucinations have been voices
telling him to kill his father and his family.  He
stated, "I thought it was because Dad took care of me."
He said, "They make fun of me, like I ain't going to get
it."  He hears things like, "You ain't nothing," and
"You're better off dead than alive."  He reports that he
experiences daily auditory hallucinations throughout the
day and reports visual hallucinations occur approximately
once per month.

Mr. Beck also described a frequent history of suicide
attempts.  His first attempt was at the age of 11 when he
cut his wrist and took pills. * * *

* * * * *

**PSYCHOLOGICAL HISTORY:** * * * At age 10 he was evaluated
at Oregon State hospital for a 30 day evaluation and
reported that he was diagnosed with ADHD at that time.
He stated that he had further evaluations at age 15, 16
and 17.  He moved in and out of foster homes until the
age of 18.  His extensive psychiatric medication history
was reportedly "for voices and ADHD."  He is currently
prescribed Zyprexa.

* * * * *

**MEDICAL HISTORY:** Mr. Beck's medical history is
significant for his auditory and visual hallucinations.
* * * He reports he especially has difficulty with voices
as he tries to sleep, but medication is effective as a
sleep aid.

* * * * *

**DIAGNOSTIC IMPRESSIONS (DSM-IV-TR):**

Mr. Beck presents with a compromised IQ, limited insight
and floridly psychotic symptoms.  It is my considered
clinical opinion, which I hold with a reasonable degree
of certainty, that he currently meets criteria for
psychotic disorder, not otherwise specified, major
depressive disorder, and alcohol dependence (in a
controlled environment).  He reported a history of

12 -- OPINION AND ORDER

attention deficit/hyperactivity disorder.  It appears by
his history that he may also experience symptoms of
schizoaffective disorder due to his multiple psychotic
episodes, mood disturbance, and multiple attempts to take
his own life.  These events appear from his history to
have occurred during periods when he was, and when he was
not using illicit substances.  The origins of his mood,
thinking, and behavioral disturbances are uncertain to
this evaluator and they may have originated from his
consistent use of illicit substances at an early age.
Obviously,    his    hospitalizations    and    previous
psychological   treatment   need   to   be   independently
verified, and may shed additional light on his current
functioning.

Resp. Exh. 122 at 6-7.[2]

In stark contrast to the foregoing documentation, the state

offered  the  affidavit  of  Defense  Counsel  Bruce  Tower.   Tower

attests  to  the  circumstances  surrounding  his  representation  of

petitioner, and to his belief that petitioner was competent to pled

guilty as follows:

1.   During  my  representation  of  petitioner,  he
appeared  fully  capable  of  aiding  and  assisting  in  his
defense.  He was conversant about the facts of his case,
answered  questions  appropriately,  and  seemed  to  be
oriented and well aware of his current circumstances and
the proceedings in court.  Petitioner did not request
that I have his mental status evaluated.  I was aware of
his  limited  education,  but  on  no  occasion  did  he
indicate, either to me or the court, that he did not
understand  the  charges.   To  the  contrary,  ***from the
beginning of his case until its conclusion, petitioner***

_____

[2] Although not originally a part of the record in this
court, the psychological evaluation is properly considered in
granting habeas relief because it was accepted into evidence by
the state post-conviction court.  Resp. Ex. 114 at 11; Rule 7(a),
Rules Governing Section 2254 Cases; but see Resp. Exh. 117 at 9-
10 (noting absence of evaluation in the state post-conviction
appellate record).

13 -- OPINION AND ORDER

> *constantly demanded that he get to court so he could plead guilty to the charges and get it over with*.
>
> 2.  At no time did I tell petitioner that he would get a 90-month sentence, or that if he did not plead guilty he would get 50 to 80 years.  In our discussions regarding settlement of his case, I advised him that he would likely receive a sentence of 30 years.
>
> *  *  *
>
> 5.  Petitioner's allegation that I directed him not to tell the judge that he did not understand the nature of the charges, or that I directed his communication with the judge in any manner, is false.
>
> 6.  In my opinion, petitioner was fully aware of the nature of the charges against him and the possible penalties involved, as well as the consequences of a guilty plea.

Resp. Exh. 112 (emphasis added).

The post-conviction court orally ruled that trial counsel did "everything he was called upon to do, and he did so effectively." Resp. Exh. 114 at 11.  In a subsequent written decision, the post-conviction court denied relief on the basis that petitioner did not "sustain his burden of proof." Resp. Exh. 115.  The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.  Beck v. Hall, 213 Or. App. 685, 163 P.3d 614 (2007), rev. denied, 343 Or. 363 (2007).[3]

_____

[3] Petitioner fairly presented both his due process and ineffective assistance of counsel claims on appeal from the denial of post-conviction relief.  See Scott v. Schriro, 567 F.3d 573, 582 (9th Cir.), cert. denied, 130 S.Ct. 1014 (2009) (defining fair presentation for exhaustion purposes).  I reject respondent's argument to the contrary.

In the instant proceeding, petitioner raises the following two grounds for relief: (1) denial of due process based upon the trial court's failure to *sua sponte* inquire into petitioner's mental fitness to enter a plea; and (2) ineffective assistance of counsel due to trial counsel's failure to investigate petitioner's competence or request a competency hearing.

In support of his request for habeas relief, petitioner offers jail records, not submitted to the state post-conviction court, indicating that petitioner repeatedly complained to jail personnel in December, 2003, and January, 2004, of hearing voices and an inability to sleep. Additionally, they contain notations by jail personnel indicating that petitioner was diagnosed as bi-polar during a previous incarceration; was on Ritalin for a 3-week period in July, 2003; was on Seroquel and Zyprexa in July and August, 2003; and was discharged from state confinement without medication. Based on petitioner's history, jail personnel initially declined to prescribe medication, but later prescribed Lithium, which petitioner declined.[4]

Additionally, petitioner submits an affidavit, also not submitted to the state post-conviction court, in which he attests

---

[4] Zyprexa and Seroquel are antipsychotic drugs used for the treatment of schizophrenia and bipolar disorder. Lithium is used for the treatment of patients with bipolar disorder, but is not an antipsychotic drug. See Physicians' Desk Reference, pdrhealth.com.

that at the time of his plea, he was hearing voices, unable to sleep, very upset, and was not medicated.  Petitioner attests that he entered a guilty plea because of his "severe mental distress" and desire to "get into a state institution where [he] would get help for the voices."  Pet.'s Motion for Leave to File Addendum (#39), Exh. 1.

Finally, petitioner moves the court to supplement the record with a discharge summary from the Oregon State Penitentiary (OSP) Special Management Unit (SMU) dated September 2, 2003 (just 2½ months prior to the incidents giving rise to petitioner's conviction).  The discharge summary provides that petitioner was admitted to OSP-SMU from OSCI "due to increasing agitation from auditory hallucinations and an inability to tolerate the dining room."  The discharge summary notes that petitioner is "in the borderline MR range", his judgment is poor, and his reality assessment is mildly impaired.  Petitioner was non-compliant with his medications, and insistent that antipsychotic medications have no affect on his hallucinations.  At the time of his discharge, he was diagnosed as suffering from an Axis 1 psychotic disorder, a pervasive development disorder, attention deficit disorder with hyperactivity; and an Axis II antisocial personality disorder, with borderline intellectual functioning.

In light of the Supreme Court's recent decision in Cullen v. Pinholster, 2011 WL 1225705 *8 (Apr. 4, 2011), concluding that

16 -- OPINION AND ORDER

review under § 2254(d)(1) is limited to the record that was before the state court, I agree with respondent that petitioner's affidavit, the jail records, and the discharge summary are not admissible in the instant proceeding.   However, based upon the evidence before the state post-conviction court, I conclude that habeas relief is warranted.

### DISCUSSION

A petition for writ of habeas corpus, filed by a state prisoner, shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law"; or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented".   28 U.S.C. § 2254(d).   This standard applies even where there has been a summary denial by the state court.   Cullen, 2011 WL 1225705 *11; Harrington v. Richter, 131 S.Ct. 770, 784 (2011).

### I.   Due Process.

A criminal defendant has a due process right not to be tried or convicted while incompetent to stand trial.   Drope v. Missouri, 420 U.S. 162, 171 (1978); Pate v. Robinson, 383 U.S. 375, 378 (1966); Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. Jan. 31, 2011); Maxwell v. Roe, 606 F.3d 561, 564 (9th Cir. 2010).   To be competent to stand trial, a defendant must have "a rational as well

17 -- OPINION AND ORDER

as factual understanding of the proceedings against him," and "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." Stanley, 633 F.3d at 860 (internal quotations omitted); Drope, 420 U.S. at 171; Maxwell, 606 F.3d at 568.  The same standard applies to competence to enter a guilty plea.  Godinez v. Moran, 509 U.S. 389, 399-400 (1993).

A trial court is required to *sua sponte* conduct a competency hearing if it receives evidence or information that raises a *bona fide* doubt about the defendant's competency.  Pate, 383 U.S. at 385; Stanley, 633 F.3d at 860; Maxwell, 606 F.3d at 568; McMurtrey v. Ryan, 539 F.3d 1112, 1119 (9th Cir. 2008).  The relevant inquiry is whether a reasonable judge would have experienced substantial doubt with respect to the petitioner's competency in light of what was then known.  McMurtrey, 539 F.3d at 1118-19; Stanley, 633 F.3d at 860.  Prior medical opinions about the defendant's competency, evidence of irrational behavior by the defendant, and the defendant's demeanor are all relevant to this determination. Drope, 420 U.S. at 180; Maxwell, 606 F.3d at 568.  However, because there are no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed, a wide range of manifestations and subtle nuances must be considered. Drope, 420 U.S. at 180; McMurtrey, 539 F.3d at 1118.[5]

---

[5] Because the state post-conviction court did not expressly address this ground for relief, I have given the state court

Petitioner argues that "[t]he trial court unreasonably proceeded with the change of plea hearing with an[] unmedicated defendant who had a history of psychiatric problems, and who disregarded warnings from his attorney in order to plead guilty as quickly as possible, even if it meant he would receive a needlessly longer sentence." Brief in Support at 13. Additionally, petitioner complains that the trial court was aware of additional facts at the time of sentencing which warranted a competency hearing. I agree.

Petitioner appeared before Judge Seitz on three occasions. Although there is no transcript of the first proceeding, reference is made to it during the plea hearing. Both defense counsel and the judge note that petitioner was insistent on pleading guilty from the beginning. Resp. Exh. 104 at 3 & 5. At the time of the plea hearing, Judge Seitz was aware of the fact that (1) petitioner had engaged in erratic offense behavior; (2) petitioner was insistent on quickly entering a guilty plea to all charges in order to get it "over with"; (3) petitioner was not listening to the advice of counsel and believed a guilty plea to all counts was in his best interests; and (4) jail officials would not let petitioner have his medication.

---

record an independent review to determine whether petitioner has met his burden of demonstrating that there is no reasonable basis for the state court's decision denying relief. Stanley, 633 F.3d at 860 (citing Richter, 131 S.Ct. at 784).

By the time of sentencing, the Presentence Report provided Judge Seitz with considerably more information in addition to petitioner's self-defeating behavior.  At that point, Judge Seitz possessed information that petitioner (1) had a fourth grade education (having been expelled in the 5th grade for stabbing a teacher in the eye); (2) was unemployed and received Social Security Disability payments for psychiatric problems; (3) has a lengthy juvenile and adult criminal history, resulting in mental health referrals and placement at the Oregon State Hospital for evaluation; and (4) recently assaulted a Sheriff Deputy after attempting to gain access to a telephone to call his doctor about medications.  Additionally, at the sentencing hearing petitioner revealed that he had a history of auditory hallucinations, and that he was no longer taking medication prescribed during his recent incarceration.  Although defense counsel did not move for a competency hearing, he characterized petitioner as a "very disturbed young man."

Based on the foregoing evidence, a reasonable judge would have experienced substantial doubt as to petitioner's competency. Admittedly, petitioner participated in the necessary colloquies with the trial court, and his demeanor in the courtroom may not have raised obvious competency concerns.  However, the evidence before the trial judge revealed an irrational defendant who had engaged in erratic offense behavior, had a very limited education

and low IQ, was hastily entering a plea against the advice of counsel, had a long history of mental illness (including auditory hallucinations), recently assaulted a Sheriff Deputy, and was not receiving his medication.  Given this undisputed evidence, and the psychological evaluation of Dr. Marlow presented to the state post-conviction court, I conclude that there is no reasonable basis to support the state court's rejection of petitioner's due process claim.  Accordingly, the post-conviction court's decision is an unreasonable application of clearly established federal law, and habeas corpus relief is warranted.  28 U.S.C. § 2254(d)(1); <u>Cullen</u>, 2011 WL 1225705 *11.

## II.  <u>**Ineffective Assistance of Counsel**</u>.

Petitioner also claims that trial counsel rendered ineffective assistance of counsel due to his failure to investigate petitioner's competency and request a competency hearing. Petitioner argues that his incompetence should have been apparent to trial counsel, and that it is likely petitioner "would have gone to trial, or had a different, more favorable outcome had he not been allowed to irrationally cut the proceedings short."  Pet.'s Brief at 18.  According to petitioner, trial counsel's "advice that he should not enter a plea is proof that Mr. Beck was likely prejudiced by the hasty termination of his case."  <u>Id.</u>

A claim of ineffective assistance of counsel requires petitioner to prove that counsel's performance fell below an

objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Bell v. Cone</u>, 535 U.S. 685, 695 (2002); <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000); <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). The Supreme Court has applied this two-part analysis to ineffective-assistance claims arising out of the plea process. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). In applying this test, I recognize the strong presumption that counsel's representation fell within the wide range of reasonable professional assistance. <u>Premo v. Moore</u>, 131 S.Ct. 733, 739 (2011).

**A.    Deficient Performance.**

As outlined above, at the time petitioner entered his plea, trial counsel was aware of petitioner's irrational offense behavior, petitioner's self-defeating behavior in refusing counsel's legal advice and insisting on entering a hasty plea with no concessions from the state, and that petitioner was not being provided his medication. Prior to sentencing, trial counsel was aware of the additional information in the Presentence Report, including petitioner's limited education, extremely low IQ, his receipt of Social Security Disability Benefits for psychiatric problems, his extensive juvenile and adult criminal history of

irrational behavior and mental health referrals, his recent assault on a Sheriff Deputy, and his history of auditory hallucinations.

Trial counsel's failure to investigate petitioner's mental health history and move for a competency hearing was a complete abdication of his role as an advocate, and fell below the objective standard of reasonableness. The post-conviction court's conclusion that trial counsel did everything he was called upon to do, and he did so effectively is an unreasonable determination of the facts, and an unreasonable application of clearly established federal law, given the undisputed evidence that counsel simply allowed petitioner to enter a hasty, ill-advised plea, without any investigation and in the face of information that petitioner had a long history of irrational behavior, mental illness, and hallucinations. See 28 U.S.C. §§ 2254(d)(1) & (2).

**B.   Prejudice.**

Proof of prejudice in this context requires petitioner to demonstrate that there is a reasonable probability that, had counsel investigated petitioner's competence and requested a competence hearing, petitioner would have been found to be incompetent. Stanley, 633 F.3d at 862; see also Boyde v. Brown, 404 F.3d 1159, 1167 (9th Cir.), as amended on reh'g, 421 F.3d 1154, 1167 (9th Cir. 2005)(rejecting ineffective assistance of counsel claim because evidence indicated petitioner was competent); Hoffman

v. Arave, 455 F.3d 926, 938 (9th Cir. 2006), vacated in part on other grds, 552 U.S. 1008 (2008) (same).

Based on the evidence outlined above, there is a reasonable probability that, had trial counsel investigated petitioner's competence and requested a hearing, petitioner would have been found incompetent and would not have entered a guilty plea. Accordingly, the state court's rejection of petitioner's ineffective assistance of counsel claim constitutes an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d)(1).

**CONCLUSION**

Based on the foregoing, petitioner's motion to supplement the record (#62) is DENIED, and petitioner's amended habeas corpus petition (#34) is GRANTED.  The parties shall submit a form of judgment within 14 days.

IT IS SO ORDERED.

DATED this ___14___ day of April, 2011.

Garr M. King
United States District Judge

24 -- OPINION AND ORDER